## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 23 2017, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin Holman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 23, 2017

Court of Appeals Case No.
49A04-1701-CR-84

Appeal from the Marion Superior Court

The Honorable Christina Klineman, Judge

Trial Court Cause No.
49G17-1611-CM-44831

**Brown, Judge.**

[1] Justin Holman appeals his conviction for domestic battery and battery resulting in bodily injury as class A misdemeanors. Holman raises one issue which we revise and restate as whether the evidence is sufficient to sustain his convictions. We affirm.

## Facts and Procedural History

[2] On November 17, 2016, Holman lived with Brandi James in a duplex unit she leased in Indianapolis. Holman was on house arrest and GPS monitoring. When James returned home that day, the door was locked and, because she had left her keys inside, she went to the next door neighbor. Through a window, James observed that Holman and another woman were interacting with each other. James knocked on the door and when the door opened began yelling at Holman. James told Holman that she needed him to let her in the house because she had left her keys inside, and he let her in the house. James then walked to a friend's house which was about five houses down, stayed there about ten or fifteen minutes, and then walked back home. As she returned, she saw Holman and the other woman kissing in front of the neighbor's house. James and Holman began to argue, Holman entered the house and sat on the couch, and James could tell by Holman's eyes and odor that he was intoxicated. Holman grabbed the food James had bought, she said not to eat her food and tried to take it, and he flipped the food and it went everywhere in the room. James told Holman that he needed to leave, suggested that the other woman help him move his stuff to her house, placed his clothes and shoes on the grass outside, and called the police. The police responded to the scene and

separated Holman and James, and at some point James went to the next street to call her mother. James had Holman's phone with her, an officer told her to give the phone back to Holman, and she took the battery out and gave the phone back. The police told Holman to call his house arrest officer the next morning to have his address moved, told him they did not want to have another call, and then left.

[3] After the officers left, Holman took his clothes back inside. He came outside and argued with James near a basketball court across the street from the duplex. Holman placed his arm around James's neck, choked her, and pulled her to the ground. He pulled James's shirt down, obtained her cell phone, removed the battery from the phone, and placed it in his phone. Holman walked into the house, James followed him and threw his things back outside, he began to throw her things outside, and she tried to prevent him from doing so. When Holman "went out the last time, [James] slammed the door and tried to lock it while he tried to come in," and Holman "bust[ed] through [the] door." Transcript Volume 2 at 23. Holman grabbed James around her neck with his arm and choked her, making it difficult for her to breathe. Holman called James a "b-" and said "I'm not tryin' . . . to hurt you," and she replied "[y]ou are hurting me." *Id.* at 24. James ran down the street and knocked on the door of another neighbor, Frederick Foster. Foster opened the door and observed that James was crying and out of breath, and James said that "somebody was after her." *Id.* at 6. The police arrived and photographed James's injuries.

[4]    On November 18, 2016, the State charged Holman with: Count I, domestic battery as a class A misdemeanor; and Count II, battery resulting in bodily injury as a class A misdemeanor. The court held a bench trial at which it heard the testimony of James, Holman, and Foster. The court also admitted into evidence photographs of James and GPS records from Marion County Community Corrections showing Holman's locations between 9:00 p.m. and 11:59 p.m. on November 17, 2016. Foster testified that he heard a knock on his door and opened it to see James "shaken up, cryin' . . . out of breath." *Id.* at 7. He testified that James was looking out the window and said "[t]here he go" and that "[h]e was actually walking past, like he was looking for her . . . ." *Id.* James also testified that, when she was at Foster's house, she saw Holman "[w]alking down the sidewalk towards where I was coming down from our street." *Id.* at 33. James further indicated that there was a prior incident between her and Holman, that she had made a statement to the police regarding that incident, and then she later recanted under oath. When asked why she recanted, James answered "[b]ecause [Holman] had asked me to and I was still in love with him. And so, and, I didn't want to see him locked up." *Id.* at 42. Holman testified that at the time of the altercation he was on house arrest, that it was "close to 9:30 p.m. or 10:00 p.m.," that he could not "even get ahold of the house arrest dude," and that he said "[i]n the morning I can call him. And then I can get my address changed and we can be done." *Id.* at 46. When asked "so your GPS allows you to go to the neighbor's house and it doesn't go off," Holman testified "[w]ell yeah because it's all like within the same – for one (1), it's a double, and cutting the grass means I'm like halfway in front of

their house anyway." *Id.* at 56. Holman's defense counsel argued that James testified Holman was around Foster's house "but his GPS coordinates clearly show that he was at his house all night," "[t]here's one dot that's off from his house, uh, one [sic] the East side of the street," and "I believe Ms. James testified that that's when they were arguing on the basketball court across the street, but he was there at the house all night long." *Id.* at 60. The court stated that it found James's account to be credible and that the State met its burden beyond a reasonable doubt. It found Holman guilty as to Counts I and II and sentenced him to 365 days suspended to probation on each count to be served concurrently.

## *Discussion*

[5] The issue is whether the evidence is sufficient to sustain Holman's convictions. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[6] Ind. Code § 35-42-2-1.3 provides that "a person who knowingly or intentionally . . . touches a family or household member in a rude, insolent, or angry manner . . . commits domestic battery, a Class A misdemeanor." The State alleged under Count I that Holman "did knowingly touch Brandi James, a family or household member, in a rude, insolent or angry manner by striking and/or grabbing Brandi James." Appellant's Appendix Volume II at 16. Ind. Code § 35-42-2-1 provides that "a person who knowingly or intentionally: . . . touches another person in a rude, insolent, or angry manner . . . commits battery, a Class B misdemeanor," and that the offense is a class A misdemeanor if it results in bodily injury to any other person. The State alleged under Count II that Holman "did knowingly touch Brandi James in a rude, insolent, or angry manner by striking and/or grabbing Brandi James resulting in bodily injury, that is: pain and/or abrasions." Appellant's Appendix Volume II at 16. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[7] Holman contends that the testimony of James was not credible. He argues that James recanted a previous accusation of battery against him under oath, that at that time she did not want him to be locked up, and that this time he was breaking her financially and kissing another woman. He further asserts that, while James claimed he followed her towards Foster's house, Foster did not identify him at trial and her claim is belied by GPS tracking. The State notes that James testified that Holman grabbed her by the neck with his arm and choked her, causing pain, that the entirety of Holman's argument is a request to

reweigh the evidence and reassess James's credibility, and that the trier of fact found James to be a credible witness.

[8] The record reveals that Holman and James engaged in an extended verbal argument after James observed Holman interacting with and later kissing another woman. James testified that Holman confronted her outside near the basketball court across the street from the duplex she leased, placed his arm around her neck, choked her, and pulled her to the ground. She also testified that subsequently, when she was inside the duplex and attempted to lock the door, Holman pushed through it, grabbed her around the neck, and choked her. James and the other witnesses were thoroughly cross-examined, and the court noted that it found James's account to be credible. While the GPS records map admitted into evidence does not show location markers for Holman as far south as the location of Foster's house, the map shows a location marker across the street from the duplex leased by James and at numerous locations on the duplex's property. Further, the trial court was in a position to assess the credibility of the witnesses and their testimony and to consider the impact of the testimony regarding the observations of Holman near Foster's house and the fact that James had previously alleged and later under oath recanted similar accusations against Holman.

[9] Based upon the record, we conclude that evidence of probative value was presented from which the court as the trier of fact could find beyond a reasonable doubt that Holman committed the offenses of domestic battery and battery resulting in bodily injury as class A misdemeanors.

## *Conclusion*

[10] For the foregoing reasons, we affirm Holman's convictions.

[11] Affirmed.

May, J., and Pyle, J., concur.